IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, : : : Plaintiff, : : v. : : : LINCOLN WOOD, NICOLE : JENNINGS WADE, JONATHAN D. : GRUNBERG, and G. TAYLOR : WILSON, : : Defendants. : | CIVIL ACTION NO. 1:22-cv-03217-LMM |

## **ORDER**

This case comes before the Court on Plaintiff's Motion for Summary Judgment [63] and Defendant Wood's Motion for Summary Judgment [74]. After due consideration, the Court enters the following Order.

### **I.  BACKGROUND**

Plaintiff seeks a declaratory judgment regarding coverage for two underlying lawsuits filed by Defendants Wade, Grunberg, and Wilson ("the WGW Defendants") against Defendant Wood. Dkt. No. [47]. Defendant Wood had an umbrella policy with Plaintiff spanning from July 14, 2020 through July 14, 2021 ("the policy"). Dkt. No. [24-1]. The policy generally provides excess coverage for bodily injury, personal injury, and property damage liability. Id.

The WGW Defendants first sued Defendant Wood in Fulton County Superior Court. The WGW Defendants worked at the same law firm as Defendant Wood until February 2020.[1] Dkt. No. [63-1] ¶ 7. A month later, the WGW Defendants and Defendant Wood entered a settlement agreement to resolve issues relating to the WGW Defendants' departure from the firm. Id. ¶ 12. That settlement included a non-disparagement clause. Id. ¶ 21. In August 2020, the WGW Defendants sued Defendant Wood in Fulton County Superior Court for violations of that clause ("Fulton County lawsuit"), and the Fulton County judge entered an injunction against Defendant Wood. Id. ¶¶ 20–21; Dkt. No. [74-3] ¶ 8.

In March 2022, the WGW Defendants sued Defendant Wood in this District, alleging defamation ("the federal lawsuit"). Wade v. Wood, No. 1:22-cv-01073-MLB (N.D. Ga. Mar. 17, 2022). After Defendant Wood was served in the federal action, he notified Plaintiff of the claims against him. Dkt. No. [69] ¶ 25. Plaintiff responded that it would not be defending him in the federal lawsuit and stated that the claims were outside Defendant Wood's coverage. Dkt. No. [70-1]. The federal lawsuit remains pending.

Defendant Wood also has underlying insurance with Georgia Farm Bureau ("the GFB policies"). Dkt. No. [63-18]. The GFB policies provide coverage for bodily injury and property damage. Id. In a separate declaratory judgment action

---

[1] Defendants object to the materiality of facts about the Fulton County lawsuit. The Court does not rely on these facts in its analysis but includes them here as necessary background for Plaintiff's claims.

in Fulton County Superior Court, the court determined that GFB did not owe Defendant Wood coverage or an obligation to defend in the federal lawsuit. Dkt. No. [88-1].

Plaintiff filed this suit in August 2022, seeking a declaration that it did not owe Defendant Wood coverage for the Fulton County and federal lawsuits. Dkt. No. [47]. Plaintiff now moves for summary judgment, arguing that it does not owe Defendant Wood any coverage here because Plaintiff did not receive timely notice and substantive policy exclusions apply. Dkt. No. [63]. Defendant Wood also seeks summary judgment, arguing the reverse: Defendant Wood contends that he provided Plaintiff with timely notice and that the policy covers the federal lawsuit. Dkt. No. [74].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of

the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party discharges its burden by merely "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute for trial. Id. (citations omitted). All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether any of the parties deserves judgment as a matter of law on the undisputed facts. S. Pilot Ins. Co. v. CECS, Inc., 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." Id. at 1243.

### III. DISCUSSION

Plaintiff contends that it has no obligation to provide coverage for the Fulton County and federal lawsuits against Defendant Wood because (1) it did not receive timely notice, (2) the policy's personal injury exclusion applies, and (3) the policy's business exclusion applies. Dkt. No. [63]. Defendant Wood also seeks summary judgment; he claims that he did timely notify Plaintiff of the claims against him and that the policy provides coverage. Dkt. No. [74]. For the reasons explained below, the Court finds that the personal injury exclusion applies, so it does not address the parties' other substantive arguments.

Plaintiff requests declarations that it does not owe Defendant Wood coverage in the Fulton County lawsuit (Count One) or the federal lawsuit (Counts Two and Three). Dkt. No. [47]. The parties agree that Plaintiff does not owe Defendant Wood coverage relating to the Fulton County case. Dkt. No. [63-2] at 14; Dkt. No. [86] at 5. Therefore, Plaintiff's Motion for Summary Judgment is

**GRANTED** as to Count One, and the Court turns to whether Plaintiff owes coverage for Counts Two and Three, which relate to the federal suit.

### A. Subject-Matter Jurisdiction

As a threshold matter, the WGW Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiff's claims because they are premature.[2] Dkt. No. [71] at 12. Defendants argue that a declaratory judgment action regarding coverage is not ripe until a judgment or settlement is entered against the insured.[3] Id. Plaintiff responds that although Georgia law may require an insurance company to wait for a judgment or settlement, federal law controls whether this action is ripe, and the threat of insurance coverage is sufficient to create a justiciable case or controversy. Dkt. No. [75] at 2–6. The Court agrees with Plaintiff.

The Georgia Declaratory Judgment Act is procedural, not substantive, so the federal Declaratory Judgment Act controls whether this action is justiciable. Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330, 1332–33 (11th Cir. 1989) (per

---

[2] Defendant Wood makes a similar argument in passing. He states that insurers may only seek declaratory judgments when they are defending the insured and are unsure how to proceed, citing Georgia law. Dkt. No. [70] at 6.

[3] The WGW Defendants cite Phoenix Insurance Co. v. Robinson Construction Co., No. 1:20-cv-414-LMM, 2020 WL 5755010, at *5 (N.D. Ga. Aug. 21, 2020) for this proposition. Although the Court found that it did not have jurisdiction regarding an indemnity issue, the Court found jurisdiction over whether the insurance company had a duty to defend. The Court reasoned that it could resolve the defense issue based on language in the contract and allegations in the complaint. The same is true here, so exercising jurisdiction to issue a declaratory judgment is appropriate.

curiam), *abrogated on other grounds by* Wilton v. Seven Falls Co., 515 U.S. 277 (1995). "Federal courts long have held that an insurance company seeking determination of its liabilities under an insurance contract could utilize the Declaratory Judgment Act for such a purpose." State Farm Mut. Auto. Ins. Co. v. Bates, 542 F. Supp. 807, 817 (N.D. Ga. 1982); Travelers Cas. & Sur. Co. v. Stewart, No. 1:14-CV-837-AT, 2015 WL 11233187, at *3 (N.D. Ga. Jan. 5, 2015). When parties to an insurance contract have "a dispute as to its proper interpretation and consequences," and "[t]he rights and duties of each may or may not be affected by a particular statute or judicial decision," there is a justiciable dispute under the federal Declaratory Judgment Act. Bates, 542 F. Supp. at 817; Am. Ins. Co. v. Evercare Co., 699 F. Supp. 3d 1355, 1359–60 (N.D. Ga. 2010). Here, the parties dispute their duties relating to the federal lawsuit, creating a live case or controversy. There is no requirement that the Court wait until the federal lawsuit is resolved before making this determination. See Evercare, 699 F. Supp. 2d at 1359 ("Indeed, 'the purpose of declaratory judgment actions is to resolve outstanding controversies without forcing a putative defendant to wait to see if it will be subjected to suit.'" (alteration adopted) (quoting Sherwin-Williams Co. v. Holmes Cnty., 343 F.3d 383, 398 n.8 (5th Cir. 2003))).

Additionally, the WGW Defendants argue that Plaintiff cannot seek a declaratory judgment until the Fulton County case regarding Defendant Wood's GFB policies ends. Dkt. No. [71] at 12. That case ended in December 2023; the

7

court determined that GFB did not owe Defendant Wood coverage, payment, or an obligation to defend Defendant Wood in the federal lawsuit. Dkt. No. [88-1]. Therefore, the Court finds that Plaintiff's Motion is ripe for adjudication.

### B. Reservation of Rights

Another threshold matter concerns Plaintiff's reservation of rights. Defendant Wood contends that Plaintiff failed to provide timely notice and reservation of rights. Dkt. No. [70] at 5–9. He also argues that Plaintiff sent reservations of rights that were improper under Georgia law. Id. In effect, Defendant Wood seems to argue that Plaintiff cannot bring this declaratory judgment action because of these errors. Plaintiff responds that it was not required to reserve its rights because it is an excess carrier and has not assumed Defendant Wood's defense. Dkt. No. [75] at 6–7. The Court agrees with Plaintiff.

Under Georgia law, "a reservation of rights is only available to an insurer who undertakes a defense while questions remain about the validity of the coverage." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 416 (Ga. 2012). Plaintiff is not defending Defendant Wood, so it is not required to provide a reservation of rights. See id. ("A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer *to provide a defense to its insured* while still preserving the option of litigating and ultimately denying coverage." (emphasis added)).

Defendant Wood asserts that Plaintiff denied coverage under a reservation of rights, but as Defendant Wood notes, insurers have three options when an

insured is sued. Dkt. No. [70] at 6–7. The insurer may (1) defend the claim against the insured and waive its defenses; (2) "deny coverage and refuse to defend, leaving policy defenses open for future litigation"; or (3) "defend under a reservation of rights." Hoover, 730 S.E.2d at 404–05. Here, Plaintiff did not assume Defendant Wood's defense in the federal lawsuit. In fact, it expressly disclaimed its duty to defend because Plaintiff had underlying insurance. Dkt. No. [70-1] at 8. In the same letter, Plaintiff expressed its position that it did not owe Defendant Wood coverage for the federal suit. Id. Thus, Plaintiff took the second route, so it was not required to issue a reservation of rights.

Defendant Wood does separately acknowledge that Plaintiff is not providing him a defense, yet Defendant Wood contends that Plaintiff's letter was an invalid reservation of rights and that Plaintiff should have filed an outright denial of coverage instead. Dkt. No. [70] at 9. Defendant Wood does not provide any law explaining why Plaintiff's letter explaining its coverage position was an improper denial of coverage, nor does he explain why Plaintiff was required to provide such a denial in its unique position as an excess carrier. Therefore, the Court will not deny Plaintiff summary judgment on these grounds.

Additionally, as an excess carrier, Plaintiff advised Defendant Wood to contact Plaintiff again if the underlying insurer ceased its defense. Dkt. No. [70-1] at 8. In December 2023, the Fulton County Superior Court determined that GFB, the underlying insurer, did not owe Defendant Wood a duty to defend. Dkt. No. [88-1]. Although Defendant Wood mentions that Plaintiff must defend him if his

9

underlying insurer withdraws coverage,[4] Dkt. No. [70] at 5; Dkt. No. [89-1] at 3, there is no indication that Defendant Wood has requested Plaintiff's defense by notifying the company of the GFB decision. In its first communication to Defendant Wood after the federal lawsuit, Plaintiff stated, "If GFB withdraws its offer of defense, please notify us immediately so we can re-evaluate our position." Dkt. No. [70-1] at 8. Defendant Wood does not appear to have done so, and Plaintiff's Complaint relates only to contract interpretation for coverage. Thus, the Court will not deny Plaintiff's Motion for Summary Judgment for failure to issue a reservation of rights.

Last, Defendant Wood contends that Plaintiff was required to file this case "immediately" after receiving notice and to stay the underlying proceeding, pending the outcome of this declaratory judgment action. Dkt. No. [70] at 7–8. But Defendant Wood does not cite any law regarding an excess carrier's decision to deny coverage and defense. Instead, Defendant Wood only points to an insurer's duty to seek immediate relief and a litigation stay under Georgia law when an insured does not consent to an insurer's defense. Id. While that may be true when an insured rejects an insurer's defense, that is not the case here (as evidenced by Defendant Wood now arguing that Plaintiff should provide for his defense). Additionally, for the reasons already discussed above, the Court finds

---

[4] The WGW Defendants also assert that Plaintiff has a duty to defend Defendant Wood in the federal lawsuit if GFB has no duty to defend him. Dkt. No. [71] at 6.

this declaratory judgment action proper under federal law. Thus, the Court proceeds to the merits of Plaintiff's claims.

### C. Coverage

Plaintiff argues that the personal injury exclusion bars coverage for the federal lawsuit because Defendant Wood does not have underlying insurance for defamation. Dkt. No. [63-2]. The WGW Defendants respond that the exclusion does not apply because it is inconsistent with other contract provisions. Dkt. No. [71]. Defendant Wood argues that the exclusion does not apply because he may have underlying coverage for defamation, and the policy terms are ambiguous. Dkt. No. [70]. The Court agrees with Plaintiff.

Georgia law provides that normal rules of contract interpretation govern insurance actions: "Like any other contract, an insurance policy must be construed according to its plain language and express terms." Ga. Farm Bureau Mut. Ins. Co. v. Kephart, 439 S.E.2d 682, 683 (Ga. Ct. App. 1993). "No construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation." Citicorp Indus. Credit, Inc. v. Rountree, 364 S.E.2d 65, 68–69 (Ga. Ct. App. 1987) (alteration adopted) (quoting R. S. Helms, Inc. v. GST Dev. Co., 219 S.E.2d 458, 460 (Ga. Ct. App. 1975)). Such "unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries." Rec. Town, Inc. v. Sugarloaf Mills, Ltd. P'ship of Ga., 687 S.E.2d 640, 643 (Ga. Ct. App. 2009). An insurance policy "should be read as a layman

would read it and not as it might be analyzed by an insurance expert or an attorney." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009) (quoting Cont'l Ins. Co. v. Am. Motorist Ins. Co., 542 S.E.2d 607, 610 (Ga. Ct. App. 2000)).

Under Georgia law, exclusions should be strictly construed, and any ambiguities are interpreted in favor of coverage. Great Am. All. Ins. Co. v. Anderson, 847 F.3d 1327, 1331–32 (11th Cir. 2017). "[A]n insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." First Specialty Ins. Corp. v. Flowers, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007). To "carry its burden of showing that a policy exclusion applies," Plaintiff can rely "exclusively upon the allegations against the insured in the underlying complaint." Id. With these principles in mind, the Court finds that the relevant terms in Plaintiff's policy are unambiguous and that Plaintiff has carried its burden to show that the personal injury exclusion applies.

Coverage A in Plaintiff's policy with Defendant Wood states,

> The Company will pay on behalf of the insured the amount of "ultimate net loss" . . . [i]n excess of the "underlying limits" (whether collectible or not) because of "personal injury" for which an "insured" becomes legally liable due to one or more offenses listed under the definition of "personal injury" to which this insurance applies.

Dkt. No. [24-1] at 14. The parties agree that "personal injury" includes damages for defamation because the policy defines "personal injury" to include "[o]ral or written publication of material which slanders or libels a person or organization."

12

Id. at 22. Therefore, the only debate is about whether an exclusion bars coverage here.

Plaintiff argues that the policy excludes coverage for personal injury unless the claim is covered by underlying insurance. Coverage A itself includes the phrase "in excess of the underlying limits," and the policy contains an express exclusion for personal injury. Id. at 14, 18. The policy excludes coverage for "'Personal injury,' except to the extent that insurance therefore is provided by the 'underlying insurance.'" Id. at 18. In other words, Plaintiff's policy only provides coverage for personal injury if that personal injury is already covered by underlying insurance. Plaintiff argues that because Defendant Wood's underlying insurance with GFB does not provide coverage for non-physical emotional or mental harm, Plaintiff's policy does not cover the defamation claims against Defendant Wood in the federal case. Dkt. No. [63-2] at 18. The Court agrees.

The WGW Defendants respond that the personal injury exclusion cannot coexist with a condition in the policy, which provides:

> Failure of the "named insured" to comply with this agreement shall not invalidate this policy, but if any portion of the "underlying insurance" . . . is *uncollectible* for any reason . . . this policy shall apply in the same manner it would have applied had the "underlying insurance" been in force, fully collectible, and with the minimum required limits of liability.

Dkt. No. [24-1] at 20 (emphasis added); Dkt. No. [71] at 21–22. The WGW Defendants read this condition to be in direct conflict with the personal injury exclusion because the condition promises coverage regardless of whether

13

underlying insurance exists. Dkt. No. [71] at 22. Because of this conflict, the WGW Defendants contend that the policy is ambiguous and must be construed in favor of coverage.[5] Id.

Plaintiff replies that Defendants mischaracterize the underlying insurance condition: the condition applies when underlying coverage is *uncollectible*, not when underlying coverage does not exist. Dkt. No. [75] at 15. The Court agrees. The contract is an umbrella policy meant to provide excess coverage, not new insurance for uncovered damages. Coverage A is titled "Excess 'Bodily Injury,' 'Personal Injury' and 'Property Damage' Liability." Dkt. No. [24-1] at 14. Coverage A then states that Plaintiff will pay "[i]n excess of the 'underlying limits' (whether collectible or not) because of 'personal injury.'" Id. Thus, it is clear that Coverage A is not meant to provide additional insurance for claims that are not already covered by underlying insurance. The personal injury exclusion underscores that point; it does not contradict it.

Defendant Wood's response takes a different route: Defendant Wood argues that the underlying GFB policies are ambiguous, so it is unclear whether the GFB policies would cover defamation damages. Dkt. No. [70] at 17–24. The Fulton County Superior Court already ruled in a separate declaratory judgment action that the GFB policies do not provide coverage for the allegations against Defendant Wood in the federal case. Dkt. No. [88-1]. This Court agrees: the GFB

---

[5] Defendant Wood makes the same argument in his Reply in support of his own Motion for Summary Judgment. Dkt. No. [86] at 10. The Court is unpersuaded.

14

policies cover bodily injury and property damage, not personal injury. Dkt. No. [63-18] at 23. Defendant Wood argues that "bodily injury" in the GFB policies is ambiguous and could be construed to include defamation damages, but the contract explicitly defines bodily injury. In the GFB policies, "bodily injury" means "bodily harm, sickness or disease, including required care, loss of services and death that results." Id. at 8. Additionally, as the state court opinion points out, Georgia law provides that "bodily injury" is limited to physical injury and does not include the emotional or mental harm that the broader term "personal injury" may encompass. E.g., Brayman v. Allstate Ins. Co., 441 S.E.2d 285, 286 (Ga. Ct. App. 1994); O'Dell v. St. Paul Fire & Marine Ins. Co., 478 S.E.2d 418, 420 (Ga. Ct. App. 1996); Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 435 (Ga. Ct. App. 2003). Therefore, the GFB policies are not ambiguous, and they would not cover the defamation claims against Defendant Wood.

Defendant Wood argues that Georgia law does not control interpretation here because the Court must use rules of contract construction to discern the meaning of the policy's terms. Dkt. No. [70] at 18. First, the Court notes that Georgia law is instructive because those courts applied rules of construction to the identical term "bodily injury" in other insurance contracts. Regardless, the Court finds that the term "bodily injury" is not ambiguous in Defendant Wood's insurance contracts here. To show ambiguity, Defendant Wood references a specific statutory definition of "bodily injury" in 18 U.S.C. § 1365(h)(4) and a dictionary definition. The statutory definition does not represent ordinary

15

meaning; it is a specially defined term for purposes of that statutory scheme relating to tampering with consumer products. 18 U.S.C. § 1365(h)(4). The dictionary definition, however, does represent ordinary meaning, and that definition does not include non-physical injuries. Rec. Town, 687 S.E.2d at 643. The dictionary Defendant Wood cites defines "bodily injury" as "any damage to a person's physical condition including pain or illness also called bodily harm." Dkt. No. [70] at 19. This is the only reasonable interpretation of bodily injury, so the Court cannot apply any other reading to the contract. See Varsalona v. Auto-Owners Ins. Co., 637 S.E.2d 64, 66 (Ga. Ct. App. 2006). Insurance and contract law demonstrate that the ordinary meaning of bodily injury is physical injury—not mental or emotional damages. Therefore, Plaintiff's personal injury coverage does not extend to the defamation claims against Defendant Wood because they are not covered by underlying insurance.

Next, Defendant Wood argues that the WGW Defendants allege bodily harm in the federal case because they claim, "Plaintiffs have suffered actual damages as a direct result of the Defamatory Statements about them, including emotional and mental distress." Dkt. No. [1-3] ¶ 137. Defendant Wood seeks to equate emotional and mental distress with bodily harm because distress can cause physical impairments. Dkt. No. [70] at 20. But as just explained, mental and emotional distress are distinct from bodily injury. See, e.g., O'Dell, 478 S.E.2d at 420 ("In Georgia, used in an insurance policy, the term bodily injury means just that—bodily injury. It pertains to physical injury to the body. It does

16

not include non-physical, emotional or mental harm. And it cannot be equated with a broader term personal injury." (internal quotation marks omitted) (quoting Brayman, 441 S.E.2d at 286)). Defendant Wood's interpretation thus contradicts the normal understanding of the unambiguous terms in this policy. The facts alleged in the WGW Defendants' complaint do not "even arguably" require coverage under Plaintiff's policy, so Plaintiff does not owe Defendant Wood coverage. City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998).

Defendant Wood also claims that Plaintiff's personal injury exclusion itself is ambiguous, requiring a construction in favor of coverage. Dkt. No. [70] at 20–24. Defendant Wood contends that a reasonable person would not expect Coverage A, which provides personal injury coverage, to exclude personal injury coverage unless the insured already has separate coverage. Id. at 23. He argues that the contract uses "convoluted verbiage" and contradictory provisions, which could defeat the insured's purpose in purchasing the umbrella policy.[6] Id. The Court disagrees. Contract law provides that the contract "must be examined 'as a whole' in attempting to construe any portion" of it. Garmany v. Mission Ins. Co., 785 F.2d 941, 945 (11th Cir. 1986). As discussed above, the policy clearly states that it provides "excess" coverage, not initial coverage, throughout the document.

---

[6] The WGW Defendants make a similar argument. Dkt. No. [71] at 22–23. They argue that the policy should be construed to provide coverage that the insurer reasonably expects. As explained above, the only reasonable expectation here is that the policy provides excess coverage.

17

Further, none of the terms relating to the personal injury exclusion are ambiguous, so the Court must apply their ordinary meaning. Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008) ("Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."). The personal injury exclusion clearly states that the policy does not provide coverage for personal injury when there is no underlying insurance. Thus, Plaintiff has met its burden to show that the personal injury exclusion applies.

Finally, Defendant Wood claims that he specifically sought this umbrella policy to provide coverage beyond his existing insurance, including damages for defamation, and that reading the policy to exclude coverage would defeat the contract's purpose. Dkt. No. [70] at 21, 23. But an insured's intent does not control interpretation; rules of contract construction do. See S. Fire & Cas. Co. v. Jamerson, 479 S.E.2d 404, 405–06 (Ga. Ct. App. 1996) ("When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one *reasonable* construction, the courts must expound the contract as made by the parties. Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." (quoting Allstate Ins. Co. v. Grayes, 454 S.E.2d 616, 619 (Ga. Ct. App. 1995))).

Defendant Wood is correct that umbrella policies typically provide supplemental coverage beyond what underlying primary insurance covers, but he also argues that umbrella policies can provide primary coverage for losses not covered by underlying insurance. Dkt. No. [70] at 21. While that may be true in other cases, Plaintiff's policy with Defendant Wood is clear that it only provides excess coverage. See Dkt. No. [24-1] at 2 ("Insurance is afforded for Bodily Injury, Personal Injury, Property Damage Liability and Uninsured Motorists Coverage . . . *in excess of* the retained limit . . . or underlying limit . . . ." (emphasis added)); id. at 14 ("Coverage A—Excess 'Bodily Injury,' 'Personal Injury' and 'Property Damage Liability.'"); id. ("Coverage B—Excess Uninsured Motorists Coverage."). Therefore, the Court must apply the terms' plain meaning, and under ordinary definitions, this policy does not provide coverage for the federal lawsuit. Thus, Plaintiff is entitled to summary judgment on Counts Two and Three.

In his own Motion for Summary Judgment, Defendant Wood does not discuss the personal injury exclusion; instead, he simply argues that the policy clearly and unambiguously provides coverage for defamation and that Plaintiff has not provided any evidence to show that it does now owe coverage. Dkt. No. [74-2] at 14–17. In response, Plaintiff incorporates its argument from its own Motion for Summary Judgment about the policy exclusions. Dkt. No. [83] at 16. In his Reply, Defendant Wood argues for the first time that the policy's defense provision requires coverage. Dkt. No. [86] at 10. But that provision states, "With

respect to 'occurrences' *which are covered under Coverage A* of this policy but which are not covered or required to be covered by the 'underlying insurance,' the Company, if no other insurer has an obligation to do so, shall defend any suit against the insured . . . ." Dkt. No. [24-1] at 15 (emphasis added). The Court has already determined that Coverage A does not include the federal lawsuit, so this provision also fails to create ambiguity. For the reasons explained above, the Court finds that the personal injury exclusion applies, and Plaintiff does not owe Defendant Wood coverage. Because the personal injury exclusion is dispositive, the Court does not consider the parties' remaining arguments. Plaintiff is entitled to summary judgment, and Defendant Wood's Motion for Summary Judgment is denied.

IV. **CONCLUSION**

In accordance with the foregoing, Plaintiff's Motion for Summary Judgment [63] is **GRANTED**, and Defendant Wood's Motion for Summary Judgment [74] is **DENIED**. Plaintiff does not owe Defendant Wood coverage for the Fulton County lawsuit or the federal lawsuit. The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 13th day of March, 2024.

_____
**Leigh Martin May**
**United States District Judge**